1
2
3
4
5
6          UNITED STATES DISTRICT COURT
7          EASTERN DISTRICT OF WASHINGTON
8
NIGELLE L. CHASE,                    )   No. 2:14-CV-00081-LRS
9                                     )
                    Plaintiff,        )   **ORDER GRANTING**
10                                    )   **DEFENDANT'S MOTION FOR**
        vs.                           )   **JUDGMENT,** *INTER ALIA*
11                                    )
CAROLYN W. COLVIN,                    )
12  Acting Commissioner of Social     )
    Security,                         )
13                                    )
                    Defendant.        )
14  _____  )

15      **BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment

16  (ECF No. 14) and the Defendant's Motion For Summary Judgment (ECF No. 17).

17

18                          **JURISDICTION**

19      Nigelle E. Chase, Plaintiff, applied for Title XVI Supplemental Security

20  Income benefits (SSI) on March 22, 2011.  The application was denied initially

21  and on reconsideration.  Plaintiff timely requested a hearing and a hearing was

22  held on October 22, 2012, before Administrative Law Judge (ALJ) R.J. Payne.

23  Plaintiff, represented by counsel, testified at the hearing, as did William F. Spence,

24  M.D., and Margaret R. Moore, Ph.D., as medical experts.  On December 5, 2012,

25  the ALJ issued a decision denying benefits.  The Appeals Council denied a request

26  for review and the ALJ's decision became the final decision of the Commissioner.

27  This decision is appealable to district court pursuant to 42 U.S.C. § 1383(c)(3).

28

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 1**

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of the administrative hearing, Plaintiff was 24 years old.  She has less than a high school education and no past relevant work experience.  Plaintiff alleges disability since March 3, 2011.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

1  proper legal standards were not applied in weighing the evidence and making the

2  decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433

3  (9th Cir. 1987).

4

5                                    **ISSUES**

6      Plaintiff argues the ALJ erred: 1) by relying on the testimony of medical

7  expert Margaret R. Moore, Ph.D., over the conclusions of examining psychologist

8  W. Scott, Mabee, Ph.D, with regard to Plaintiff's mental condition; 2) by

9  disregarding the opinion of treating physician Paul C. Jones, D.P.M., with regard

10 to Plaintiff's physical condition; and 3) by failing to obtain testimony from a

11 vocational expert.

12

13                                 **DISCUSSION**

14 **SEQUENTIAL EVALUATION PROCESS**

15     The Social Security Act defines "disability" as the "inability to engage in

16 any substantial gainful activity by reason of any medically determinable physical

17 or mental impairment which can be expected to result in death or which has lasted

18 or can be expected to last for a continuous period of not less than twelve months."

19 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be

20 determined to be under a disability only if her impairments are of such severity

21 that the claimant is not only unable to do her previous work but cannot,

22 considering her age, education and work experiences, engage in any other

23 substantial gainful work which exists in the national economy. *Id*.

24     The Commissioner has established a five-step sequential evaluation process

25 for determining whether a person is disabled. 20 C.F.R. § 416.920; *Bowen v.*

26 *Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she

27 is engaged in substantial gainful activities. If she is, benefits are denied. 20

28 C.F.R. § 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two,

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

which determines whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past.  If the claimant is able to perform her previous work, she is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience.  20 C.F.R. § 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ALJ'S FINDINGS

The ALJ found the following: 1) Plaintiff has not engaged in substantial gainful activity since March 3, 2011; 2) Plaintiff  has "severe" impairments which

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 4**

include foot pain, palmar plantar hyperkeratoris, calluses and bunions, personality disorder, anxiety and somatoform disorder; 3) Plaintiff does not have an impairment or combination of impairments that meets or equals any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 4) Plaintiff has the residual functional capacity (RFC) to perform light exertional activity that does not require her to climb ladders, ropes or scaffolds; she can frequently climb ramps or stairs, balance, and crouch; and she has no limitations in stooping, kneeling, or crawling; 5) Plaintiff has no more than minimal to occasional limitations arising from her "severe" mental impairments; and 6) Plaintiff's physical and mental RFC allows her to perform jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded the Plaintiff is not disabled.

**RESIDUAL FUNCTIONAL CAPACITY (RFC)**

**A. Mental RFC**

The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). The ALJ gave "significant weight" to the opinions of Dr. Moore in arriving at his (the ALJ's) conclusions regarding Plaintiff's mental RFC. (Tr. at p. 34). Dr. Moore opined there were no limitations on Plaintiff's activities of daily living, that she was mildly to moderately limited in terms of social functioning, that she was at most mildly limited with regard to maintaining concentration, persistence and pace, and that there were no episodes of decompensation. (Tr. at p. 94 and p. 594). The court finds that Dr. Moore's opinions are supported by other evidence in the record and are consistent with that other evidence, and therefore serve as substantial evidence of Plaintiff's mental RFC. Furthermore, the ALJ properly discounted the opinions of Dr. Mabee.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

According to the ALJ:

> The undersigned has given limited weight to the DSHS psychological evaluations completed before the relevant time period in 2010 and in 2011 by Dr. Mabee . . . . While there is objective evidence that the claimant has mental health conditions and some resulting limitations, the undersigned finds that the evaluations conducted by [DSHS] evaluators are largely based on the claimant's self-reported symptoms and complaints, and the undersigned does not find the claimant entirely credible. The undersigned also notes that the evaluations were conducted for the purpose of determining the claimant's eligibility for state assistance; the claimant was likely aware that the continuation of [her] state assistance was dependent upon the DSHS evaluations, and she therefore had incentive to overstate her symptoms and complaints. Furthermore, the DSHS evaluators usually do not have a treating relationship with the claimant. Moreover, the undersigned notes that the evaluation forms were completed by checking boxes and contain few objective findings in support of the degree of limitation opined.

(Tr. at p. 34).

Dr. Mabee completed a DSHS evaluation in September 2010. He checked boxes indicating Plaintiff was markedly limited in her abilities to exercise judgment and make decisions and to respond appropriately to and tolerate the pressures and expectations of a normal work setting, and that she was moderately limited in her abilities to understand, remember and follow complex (more than two step) instructions, to learn new tasks, to perform routine tasks, to relate appropriately to co-workers and supervisors, to interact appropriately in public contacts, and to maintain appropriate behavior in a work setting. (Tr. at p. 312). Notwithstanding that, he also wrote:

> [Plaintiff] will be able to remember locations and work-like procedures. She will be able to understand, remember and carry out simple and verbal written instructions. She will be able to maintain attention and concentration for limited periods. She will be able to make simple work related decisions. She will be able to ask simple questions. She will be able to accept instructions. She will be able to adhere to basic standards of neatness and cleanliness. She will be able to be aware of normal hazards and take appropriate precautions. She will be able to use public transportation.

(Tr. at p. 312).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 6**

1    Plaintiff asserts that objective testing conducted by Dr. Mabee- the

2  Personality Assessment Inventory (PAI) and a mental status examination- supports

3  the severity of the limitations opined by him.  The PAI, however, is based on a

4  patient's self-reporting and moreover, Dr. Mabee noted that in Plaintiff's case,

5  "[h]er profile was deemed questionably valid."  (Tr. at p. 314).  According to Dr.

6  Mabee:

7              There appears to have been some inconsistent responses
              to similar items.  Her response pattern is unusual because
8              she indicated defensiveness about particular personal
              shortcomings as well as an exaggeration of certain
9              problems.  She endorsed items that present an unfavorable
              impression.
10

(*Id*.).

11    In his May 2011 evaluation, Dr. Mabee indicated that Plaintiff was

12  markedly limited in her ability to communicate and perform effectively in a work

13  setting with public contact, and that she was moderately limited in her abilities to

14  understand, remember, and persist in tasks by following complex instructions of

15  three or more steps, to learn new tasks, to perform routine tasks without undue

16  supervision, to communicate and perform effectively in a work setting with

17  limited public contact, and to maintain appropriate behavior in a work setting.  (Tr.

18  at p. 423).[1]  Dr. Mabee conducted another mental status examination in

19  conjunction with this evaluation (Tr. at pp. 425-27), but he did not repeat the PAI

20  this time around.

21    The ALJ legitimately called into question the Plaintiff's credibility about the

22  severity of her mental health conditions.  This was an additional independent basis

23  for discounting Dr. Mabee's opinions.  Plaintiff missed mental health counseling

24  appointments.  Non-compliance with treatment may support an adverse credibility

25

26  _____

27    [1] It appears that with regard to "Functional Limitations," there were

28  modifications to the DSHS form between September 2010 and May 2011.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

1    finding. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

2         In July 2011, Plaintiff was seeing Carla Paullin, a Chemical Dependency

3    Professional/Licensed Mental Health Counselor, to "[d]ecrease anxiety and

4    depression" and perform a "[c]omplete psychological evaluation." (Tr. at p. 476) .

5    Ms. Paullin's notes reflect as follows:

6              Nigelle attended two of four scheduled sessions in July.
             She then called and left me a message to cancel her next
7            two appointments one on 8/3 and 8/10 as she stated "her
             mother was in town." I left her a message to see if she
8            plans to continue counseling on 8/10 but she did not call
             me back. At this point, she will have to go to my waiting
9            list to get back in . . . Nigelle will have to call me to get
             back on . . . my waiting list if she wants to continue
10           counseling.

11   (Tr. at p. 477). There is no indication in the record that any follow-up with Ms.

12   Paullin occurred. While the symptoms of a claimant's mental impairment may

13   explain her non-compliance with treatment, *Nguyen v. Chater*, 100 F.3d 1462,

14   1465 (9th Cir. 1996), no medical provider in this case, including Ms. Paullin, made

15   a connection between Plaintiff's non-compliance and her mental health

16   impairment. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

17        Ms. Paullin thought a drug/alcohol assessment would be appropriate

18   because Plaintiff had been taking "opiate pain killers for a long period of time."

19   (Tr. at p. 477). And indeed, there are multiple references in the record suggesting

20   drug-seeking behavior by the Plaintiff with regard to narcotic pain medication.

21   (Tr. at pp. 415, 431, 456, 460, 463, 536-37 and 554). Drug-seeking behavior is an

22   appropriate basis for discounting a Plaintiff's credibility. *Lewis v. Astrue*, 498

23   F.3d 909, 910 (9th Cir. 2007).

24        Also, at the administrative hearing, when asked what the "biggest reason"

25   was that she could not work, the Plaintiff testified that it was because of "[her]

26   feet," noting that she was "getting help with [her] emotional needs" and taking

27   Zoloft which was helping her "feel a little better about [herself]." (Tr. at p. 45).

28

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 8**

1    The ALJ offered specific and legitimate reasons to reject Dr. Mabee's

2  opinions regarding the severity of Plaintiff's mental health limitations.  *Lester  v.*

3  *Chater*, 81 F.3d 821, 830 (9th Cir. 1996)   Those reasons are supported by

4  substantial evidence, as is the mental RFC found by the ALJ.

5

6    **B.  Physical RFC**

7    Paul C. Jones, D.P.M., was Plaintiff's treating physician regarding her foot

8  problems.  He performed a bunionectomy on Plaintiff's right foot in February

9  2011. (Tr.  at pp. 362-63).  In April 2011, he wrote a note "To Whom It May

10 Concern" which stated:  "The [Plaintiff] has been under my care for a while now

11 and has had continued debilitation secondary to pain on ambulation of bilateral

12 feet." (Tr. at p. 470).  Dr. Jones did not, however, opine what this "debilitation"

13 specifically meant in terms of Plaintiff's physical residual functional capacity.

14 Moreover, Dr. Jones's written statement is significantly colored by Plaintiff's

15 unexplained failure to attend many of the scheduled appointments she had with

16 him. (Tr. at pp. 365, 413, 489, 490 and 494).  On May 4, 2011, Dr. Jones noted the

17 Plaintiff was a "no show" for an appointment and that "[s]he has a habit of doing

18 this." (Tr. at p. 413).   On July 14, 2011, Dr. Jones noted the Plaintiff had missed

19 an appointment on Monday.  According to the doctor: "She was supposed to call

20 in and get in to see me.  I definitely believe this demonstrates a lack of adherence

21 and poses a risk to the patient in doing any further surgery . . . ." (Tr. at p. 494).

22    Plaintiff's non-compliance with treatment constitutes a clear and convincing

23 reason for the ALJ to discount Plaintiff's credibility regarding pain in her feet.

24 *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996).  In turn, it constitutes a

25 "specific and legitimate" reason for rejecting Dr. Jones's April 2011 statement to

26 the extent it is to be construed as an opinion that Plaintiff was physically

27 precluded from performing any type of work or that she was more physically

28 limited than found by the ALJ.  *Lester*, 81 F.3d at 830.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

1    **USE OF MEDICAL-VOCATIONAL RULES (GRIDS)**

2         At step five, the Commissioner has the burden of establishing there are a

3    significant number of jobs in the national economy the claimant can perform.  The

4    Commissioner may meet this burden by taking the testimony of a vocational

5    expert, or by consulting the grids.  *Tackett v. Apfel*, 180 F.3d 1094, 1100-1101 (9th

6    Cir. 1999).  For the grids to be inadequate, the non-exertional limitations must be

7    "sufficiently severe so as to significantly limit the range of work permitted by the

8    claimant's exertional limitations."  *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir.

9    2007).  When "a claimant's non[-]exertional limitations are in themselves enough

10   to limit his range of work, the grids do not apply, and the testimony of a vocational

11   expert is required to identify specific jobs within the claimant's abilities."  *Polny*

12   *v. Bowen*, 864 F.2d 661, 663-64 (9th Cir. 1988).

13        Here, the ALJ found as follows:

14             If the claimant had the residual functional capacity to
               perform the full range of light work, considering the
15             claimant's age, education, and work experience, a
               finding of "not disabled" would be directed by
16             Medical-Vocational Rule 202.17.  However, the
               additional limitations have little or no effect on the
17             occupational base of unskilled light work.  A finding
               of "not disabled" is therefore appropriate under the
18             framework of this rule.  Given an individual with the
               same age, education, and work experiences as the
19             claimant in this case, the types of exertional and
               physical non-exertional limitations, which are present
20             in the case at hand, would not significantly erode the
               job base [at] the sedentary and light job level.  See
21             SSR 83-10, SSR 83-12, SSR 83-14, SSR 85-5, and
               SSR 96-9p.
22
23   (Tr. at p. 36).

24        Other than making a conclusory assertion that a vocational expert was

25   required because of the presence of non-exertional limitations, Plaintiff does not

26   explain how her particular non-exertional limitations, as determined by the ALJ,

27   significantly eroded the job base at the sedentary and light levels.  Plaintiff does

28   not take issue with the particular Social Security Rulings [SSRs] cited by the ALJ

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 10**

in support of his conclusion that it was appropriate to rely on the grids.  As discussed above, the ALJ's determination regarding the extent of Plaintiff's exertional and non-exertional limitations is supported by substantial evidence in the record.  Because those non-exertional limitations were not sufficient in themselves to limit Plaintiff's range of light work, the ALJ did not need to consult a vocational expert and appropriately relied on the grids.

## CONCLUSION

Defendant's Motion For Summary Judgment (ECF No. 17) is **GRANTED** and Plaintiff's Motion For Summary Judgment (ECF No. 14) is **DENIED**.  The Commissioner's decision denying benefits is **AFFIRMED**.

**IT IS SO ORDERED.**  The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this ___26th___ of February, 2015.


*s/Lonny R. Suko*
_____
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 11**